UNITED STATES of America,
Plaintiff–Appellant,

v.

Edmund M. CONNERY,
Defendant–Appellee.

No. 87–3508.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1988.

Decided Feb. 10, 1989.

Rehearing Denied March 13, 1989.

James C. Lynch, Asst. U.S. Atty. (argued), Cleveland, Ohio, for plaintiff-appellant.

Edmund M. Connery, Hastings–On–Hudson, N.Y., pro se.

J. Dean Carro, Akron, Ohio, Michael V. Demczyk (argued), Canton, Ohio, for defendant-appellee.

Before KRUPANSKY and NELSON, Circuit Judges, and HACKETT, District Judge.*

HACKETT, District Judge.

The United States appeals from the judgment of the United States District Court, Northern District of Ohio, granting defendant's motion for acquittal pursuant to F.R. Crim.P. 29(c). Appellant contends that when the evidence is viewed in the light most favorable to the government, a reasonable jury could have found defendant Edmund M. Connery guilty beyond a reasonable doubt. After a thorough review of the voluminous record in this case, we must find that the jury had sufficient evidence to sustain its verdict. We therefore reverse the judgment of the district court and reinstate the jury's verdict.

PROCEDURAL BACKGROUND

On January 28, 1986, a nine-count indictment was filed against Daniel H. Overmyer and Edmund M. Connery. Overmyer was named in nine counts and charged with six

---

* The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

counts of bankruptcy fraud, 18 U.S.C. § 152, two counts of conspiracy to commit bankruptcy fraud, 18 U.S.C. § 371, and one count of mail fraud, 18 U.S.C. § 1341. Connery was charged with five counts of aiding and abetting, 18 U.S.C. §§ 2 and 152, and one count of conspiracy, 18 U.S.C. § 371.

Prior to trial, the district court granted Connery's motion for severance. The district court also granted the government's motion to dismiss Counts III, IV and V of the indictment.

On February 3, 1987, the case against Connery proceeded to trial on Counts I, II and IX. Prior to submission of the case to the jury, the district court granted Connery's motion for acquittal on Count IX. On February 24, 1987, the jury returned a verdict of guilty on Count I, aiding and abetting the filing of a false bankruptcy claim and not guilty on Count II. Connery then moved for a judgment of acquittal on Count I pursuant to F.R.Crim.P. 29(c) which the district court granted.

### THE TEST FOR REVIEWING A RULE 29(c) MOTION

■ It is well settled that the test to be applied by a trial court in connection with a defendant's motion for acquittal pursuant to Rule 29 of Federal Rules of Criminal Procedure is taking the evidence and inferences most favorably to the government, if there is such evidence therefrom to conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *York v. Tate,* 858 F.2d 322 (6th Cir.1988); *United States v. Conti,* 339 F.2d 10 (6th Cir.1964). The Supreme Court has observed that the granting of a motion of acquittal "... will be confined to cases where the prosecution's failure is clear." *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). *See, Blalack v. United States,* 154 F.2d 591 (6th Cir.), *cert. denied,* 329 U.S. 738, 67 S.Ct. 67, 91 L.Ed. 637 (1946).

An appellate court, in reviewing a trial court's decision regarding a Rule 29 motion, applies the same principles to the record it has before it. *United States v. Gibson,* 675 F.2d 825 (6th Cir.1981). Other circuits have indicated the use of the same test following the trial court's reversal of a guilty verdict pursuant to Rule 29(c). *United States v. Martinez,* 763 F.2d 1297 (11th Cir.1985); *United States v. Hazeem,* 679 F.2d 770 (9th Cir.1982); *United States v. Brandon,* 633 F.2d 773 (9th Cir.1980); *United States v. Beck,* 615 F.2d 441 (7th Cir.1980); *United States v. Varkonyi,* 611 F.2d 84 (5th Cir.1980); *United States v. Dreitzler,* 577 F.2d 539 (9th Cir.1978).

The 11th Circuit in the *Martinez* case, *supra,* stated the test for review of a verdict overturned by a judgment of acquittal as follows:

> On a motion for judgment of acquittal, the court must view the evidence in the light most favorable to the verdict and, under that light, determine whether the evidence is sufficient to support the verdict. Thus, on this motion, the court assumes the truth of the evidence offered by the prosecution. (Citation omitted).

*United States v. Martinez, supra* at 1312.

The filing of a false bankruptcy claim is prohibited by 18 U.S.C. § 152 which provides, in pertinent part:

> Whoever knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, personally, or by agent, proxy, or attorney, or as agent, proxy, or attorney, ... shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2 provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against

the United States, is punishable as a principal.

## THE EVIDENCE BEFORE THE JURY

In its case-in-chief on Count I of the indictment, the government argued that the proof of claim filed in the Overmyer Telecasting bankruptcy was false in three respects:

First, the sum contained a charge of $50,-000 per month beginning in January, 1981, for lease payments on equipment not yet installed.

Two, the sum contained a charge in the amount of $249,116.18 for installation charges for new equipment not installed as of February 6th, 1981.

And third, as of February 6, 1981, Telecasting had overpaid Hadar for any leasing obligations it might have had.

In support of these allegations substantially the same evidence presented in *United States v. Overmyer,* No. CR 86–13, slip op. (N.D.Ohio April 22, 1987) was introduced to establish the underlying scheme. In addition, the following evidence was introduced in support of the government's claim that Connery aided and abetted Overmyer.

Connery is an attorney licensed to practice in the state of New York. He also has a background in accounting. Connery began working for Overmyer in 1964. At that time, his principal duties for Overmyer involved real estate transactions and some general corporate work.

Connery worked for D.H. Overmyer Co., Inc. until it filed under Chapter 11 in the bankruptcy court, at which time he was placed on the payroll of Overmyer Distribution Services. Connery later was placed on the payroll of Intermodal Systems Leasing Inc. (ISLI). Daniel H. Overmyer controlled all of these companies.

Connery left Overmyer's employ in December, 1975, to work for Rockwood Computer Corporation, a non-Overmyer affiliated company. Connery rejoined Overmyer in August, 1977, and did work for Overmyer's various Three Park Avenue companies and for Overmyer personally.

He was paid from the payroll of Jeeb's Distribution Services, later of AGG Projects Inc. (AGG) and then of Omega. Connery was head in-house counsel. His office adjoined Overmyer's and the secretarys for Overmyer and Connery shared a reception area. Connery was responsible for the preparation of the corporate minutes for all of Overmyer's companies except R.T. Systems, including Hadar's minutes from 1977 through the time of the bankruptcy proceedings. These bankruptcy proceedings formed the basis for the criminal charges in this case.

In testimony given during related bankruptcy proceedings and read into the record in the present trial, Connery stated that he was aware of the following facts: that there was no written obligation to support Hadar's $400,000 charge for pre-paid rent in the proof of claim; that despite the fact that Telecasting was paying rent for equipment to Hadar, Hadar was not paying its vendors; and, that Hadar collected sales taxes from Telecasting, but never remitted any sales taxes to the state. He also indicated that he represented both Hadar and Telecasting in the One Hundred East Corporation transaction for the transmitter equipment.

Prior testimony of Connery was introduced at trial in which he admitted that he prepared and circulated a board resolution in the last week of March, 1981, purporting to charge Telecasting $50,000 a month rent for the equipment. The resolution had been backdated to bear the date of January 5, 1981. The resolution was signed by Overmyer, Shirley C. Overmyer, David Raible and William Chi in their capacity as Telecasting's board of directors. They signed the resolution even though they had resigned as directors on February 19, 1981, and, therefore, had no authority to act as directors.

Connery also testified that in his role in supervising and giving instructions to counsel for Hadar in the adversary proceeding in the bankruptcy court in Ohio, he instructed counsel to advise the court that Overmyer was in no way connected with, or in control of, Hadar.

David Raible, who at the time of Connery's trial was president of D.H. Overmyer Co. and who had been employed by various Overmyer related entities since 1970, testified that it was Connery who drafted the format for the service contracts which Overmyer had his corporations execute with Hadar in order to transfer funds from Hadar into other Overmyer entities such as AGG, Omega and Jeebs. Raible also testified that it was Connery who actually prepared the proof of claim in question.

E. Thomas Meisner, an accountant for Overmyer, testified that from December, 1978 to August, 1979, Telecasting overpaid Hadar by $269,778. This overpayment, plus other overpayments, created a debit balance on Hadar's books in the amount of $626,003.47. This amount was owed to Telecasting as a result of overpayments. Meisner received instructions from Connery to make a journal entry which in effect wiped out the overpayment. Meisner testified that the journal entries were contrary to generally accepted accounting principles, but he made them because his boss had instructed him to do so despite Meisner's challenge.

Peter Lynch testified that he was employed by Overmyer as an accountant in mid–1970 and was originally assigned to handle various Canadian operations. He later was used as a general accountant for many Overmyer controlled entities. He left Overmyer in 1978 to work for a non-related entity. In 1981, Connery telephoned him and asked him to have Hadar's books brought up-to-date for the period from approximately 1976 through 1981. Lynch was told that Hadar was about to file bankruptcy and that they had no records upon which to rely. Lynch testified that during this period, he always reported to Connery.

According to the records prepared by Lynch, as of September 1, 1979, Hadar owed $376,835.04 to Telecasting as a result of receiving overpayments on amounts invoiced. However, the proof of claim later filed with the bankruptcy court showed that as of September 1, 1979, there was a zero balance between Hadar and Telecasting.

Lynch also testified that after he computed final balances, certain adjusting entries were made such as in the reserves for the uncollectible debts. The decisions as to what account balances would be written down were made by Connery.

Howard Klein also testified on behalf of the government. Klein is an accountant, formerly employed by Ernst and Whinney, who was assigned to review Telecasting's records at the request of the First National Bank of Boston (FNBB). Klein testified regarding the overpayment made by Telecasting to Hadar which he calculated to be $473,000 as of September 1, 1979, and stated that when the books closed as of January 19, 1981, Hadar actually owed Telecasting $626,003.47. Klein testified also that voucher entries were made to reduce this overpayment to zero. Originally, the amount of $234,138 was offset as a deposit on the transmitter equipment and $391,-865.47 charged in anticipation of installation. It later was decided to charge $400,-000 as a deposit, reducing the anticipated installation charges to $249,116. Klein also testified that charges for lease H–1044 (the transmitter equipment) should not have been included in the proof of claim because the equipment had not been installed as required.

Michael Carrieri testified that Connery gave him the proof of claim to verify the arithmetic in approximately September, 1981.

## JURY INSTRUCTIONS

After hearing the evidence, the jurors were reminded that they are the sole judges of the credibility of the witnesses and of the weight to be attached to the testimony of witnesses. Further, the jury was instructed as follows:

\* \* \*

"Count one of the indictment charges that Mr. Connery aided and abetted Mr. Daniel Overmyer in the presentation of a false claim in the total amount of $859,481 on behalf of Hadar Leasing Company, Inc.

against the estate of D.H. Overmyer Telecasting Company, Inc., the debtor in bankruptcy case B81–00506 filed in Cleveland, Ohio, in violation of federal law.

"Specifically, Title 18, U.S.C., Section 152, paragraph 4, provides as follows, and I quote.

' "Whoever knowingly and fraudulently presents any false claim for proof against the estate of a debtor or uses any such claim in any case under the bankruptcy code personally or by agent, proxy, or attorney or as agent, proxy, or attorney shall be guilty of an offense." '

"I instruct you further that every person who willfully and knowingly participates in the commission of a crime may be found to be guilty of that offense even though it's not proved that he personally did every act constituting the crime charged. The law provides as follows, and again I quote from ·the statute.

' "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission is punishable as a principal. Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States is punishable as a principal...." ' '

"In order to aid and abet another to commit a crime it is necessary that an accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about. That is to say, he willfully seek (sic) by some act or omission of his to make the criminal venture succeed.

"The government contends that the sums mentioned in the proof of claim were in fact not due and owing from Telecasting to Hadar because, one, the sum contained a charge of $50,000 per month beginning in January 1981 for lease payments on equipment not yet installed.

"Two, the sum contained a charge in the amount of $249,116.18 for installation charges of new equipment not installed as of February 6, 1981,

"And, three, as of February 6, 1981, Telecasting had overpaid Hadar for any leasing obligations it might have had. The government in fact alleges that no payment was due at all.

"The defendant denies these allegations and denies any fraudulent intent and knowledge and asserts that he acted in good faith and believed the claim to be proper.

"To warrant your finding Mr. Connery guilty as to Count 1, you must find that the defendant (sic) has proven beyond a reasonable doubt each of the following essential elements of the crime charged. First, that the bankruptcy proceedings of D.H. Overmyer Telecasting had been commenced.

"Second, that a proof of claim on behalf of Hadar was willfully presented in the Telecasting bankruptcy proceedings.

"Third, that the proof of claim was false as to a material matter.

"Fourth, that Mr. Connery knew that the proof of claim was false at the time the claim was filed and acted knowingly and fraudulently.

"And fifth, that the defendant willfully participated in some acts in furtherance of the criminal ventures charged in the indictment.

"The gist of the offense, then, is not the validity or the propriety of all of the business dealings of the various Overmyer companies and concerns. Rather, it is whether this defendant Mr. Connery willfully and knowingly participated in the filing of a false claim for the purpose of defrauding the Bankruptcy Court and thus the creditors of Telecasting.

\* \* \*

"Now, as to the first and second elements there is no dispute concerning the fact that the bankruptcy proceedings of D.H. Overmyer Telecasting had been commenced and that the Hadar proof of claim was filed.

"Therefore, your consideration of Count I should concern the remaining elements of the offense charged. That is, whether the Hadar proof of claim was false, whether the defendant knew that the claim was

false, or whether the defendant willfully participated in some act in furtherance of the presentation of the proof of claim, and whether the defendant acted with fraudulent intent.

"To assist you in this determination, I'd like to instruct you further on some of the bankruptcy law applicable to this count.

"A proof of claim filed in a bankruptcy proceedings (sic) is a legal document submitted to the Court by a creditor of the person or corporation who has filed bankruptcy. In this document the creditor is required to notify the Court, the debtor, and all of the other creditors that he's asserting some claim or right to payment from the estate of the debtor in bankruptcy.

"This claim or right to payment can be asserted by the creditor whether or not this right or claim is reduced to judgment, whether the claim or right is liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

"In other words, the creditor can submit a claim whether or not he yet knows the exact amount, whether it is as yet ripe or even if the claim is in dispute, as long as he submits it in good faith.

"In addition, this proof of claim must be filed with the Bankruptcy Court within a specified time period after the creditor receives notice of the debtor's bankruptcy or the claim may be barred by the Bankruptcy Court.

"A proof of claim then is false only if it was untrue and made and was known to be made, made, (sic) excuse me, and was known to be untrue by the person making it or willfully causing it to be made.

"A proof of claim is not false merely because it may be inaccurate or erroneous in any or all respects. A claim may be asserted by a creditor in good faith even though the moneys being sought are thereafter successfully disputed by the debtor or disallowed by the Bankruptcy Court.

"Instead, a proof of claim is false if the statements contained therein are intentionally inaccurate and submitted without any good faith basis for the claim and are not the result of some mistake, clerical error, or inadvertent omission.

"You are instructed that all statements made on any documents filed in the Bankruptcy Court which are before you in evidence in this case are, as a matter of law, material.

"The government has alleged that the Hadar proof of claim was false in three particular respects. It is not necessary that the government prove falsity with regard to each of these three grounds. The government satisfies its burden of proving falsity if it proves beyond a reasonable doubt that the proof of claim is false on any one of the three grounds charged.

"However, you may not find the defendant guilty unless you all agree unanimously that the claim is false in one particular respect charged, if any at all.

"It is not enough that you all believe that the claim was false in some manner. You cannot, for example, find Mr. Connery guilty if some of you think that only the $400,000 deposit charge for the monthly lease payment on the new transmitter is false, and the rest of you think that only the $249,000 charge for installation of the transmitter is false.

"There must be at least one specific aspect of the proof of claim that all of you believe beyond a reasonable doubt is false before you may f[i]nd that the proof of claim was a false claim.

"Good faith is an absolute defense to the charges in this count. With respect to count one, you are instructed that the filing of a proof of claim, even if erroneous, made ... with a good faith belief in its accuracy, does not amount to a false proof of claim and is not a crime.

"The burden of establishing criminal intent rests upon the prosecution. The defendant is under no burden to prove his good faith. Rather, the prosecution must prove knowledge and falsity beyond a reasonable doubt. With respect to this count, you are instructed that the falsity of a statement is not established merely by evi-

dence that the proof of claim is inaccurate or erroneous in any or in all respects.

"Criminal law does not penalize mere inaccuracies or mistakes. In order for a proof of claim to be criminally false, it must be knowingly and intentionally false.

"Thus, if you find beyond a reasonable doubt that the proof of claim filed on behalf of Hadar was inaccurate, you must also consider whether or not that claim was intentionally false, made with fraudulent intent, or the result of an honest mistake or omission.

"In this regard, you must keep in mind the fact that the prosecution has the burden of establishing beyond a reasonable doubt that a claimed inaccuracy is the result of an intentional falsity known to this defendant and not the product of innocent mistake or clerical error.

"The government does not meet this burden of proof by showing that others in the Overmyer organization had the requisite intent. Instead the government must prove beyond a reasonable doubt that Mr. Connery had the re[q]uired intent to defeat the bankruptcy laws and avoid payment to the creditors for Telecasting.

"When the word knowingly is used in these instructions it means that the defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake, or accident.

"Knowledge may be proved or not proved by the defendant's conduct and by all of the facts and circumstances surrounding this case.

"An act is done willfully if it is done voluntarily and intentionally and with specific intent to do something which the law forbids or with the specific intent to fail to do something the law requires to be done. That is to say, with bad purpose either to disobey or disregard the law.

"The crime charged in that count is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids purposely intending to violate the law. Such intent may be determined from all of the facts and circumstances surrounding this case.

"To act with inten[t] to defraud or fraudulently means to act knowingly and with the specific intent to deceive ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to ones self.

"Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operation of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statements made and done or omitted by the defendant and all other facts and circumstances in evidence which indicate the state of mind.

"If you should find that the government has established beyond a reasonable doubt each of the elements of this offense, then you shall return a verdict of guilty as to this count.

"However, if you should find that the defendant, the government has failed to establish beyond a reasonable doubt any of these elements, then you shall return a verdict in favor of the defendant on this count."

\* \* \*

### THE DECISION BELOW

Based on these instructions, the evidence presented and its assessment of the credibility of the witnesses, the jury found Connery guilty of aiding and abetting the filing of a false claim. On April 22, 1987, the district court granted a judgment of acquittal pursuant to F.R.Crim.P. 29(c), despite the jury's verdict, reasoning:

\* \* \*

On April 22, 1987, this court issued an order granting the co-defendant Daniel H. Overmyer's motion for judgment of acquittal on count one of the indictment. *See United States v. Overmyer*, No. CR86–13, slip. op. (N.D.Ohio April 22, 1987). In that opinion this court dis-

cussed in some detail the allegations in the indictment as to count one and the elements of the offense which the Government was required to prove. The reasoning advanced in that opinion is equally applicable to this defendant and is therefore adopted.

As with Mr. Overmyer's trial, the jury in this action returned a verdict of guilty on count one of the indictment. This court required the jury to find that Mr. Connery knowingly aided and abetted in the filing of a fraudulent proof of claim in the D.H. Overmyer Telecasting bankruptcy proceedings which he knew was false as to a material matter. The Government claimed that the proof of claim was false in three specific areas . . .

The evidence which was introduced at the trial of Mr. Connery was less detailed than that presented against Mr. Overmyer. Therefore, for the reasons advanced in the court's order granting Mr. Overmyer's motion for judgment of acquittal, Mr. Connery's motion is also granted.

The evidence in the record construed in a manner most favorable to the Government would not permit a reasonable jury to find that Mr. Connery violated 18 U.S.C. § 152. At best, the Government introduced evidence that shows that Mr. Connery aided in the filing of a proof of claim which he knew was subject to dispute by the debtor and other creditors. There was no evidence introduced from which a reasonable jury could infer that Mr. Connery acted with the requisite criminal intent to deceive the bankruptcy court.

## DISCUSSION

■ When reviewed in the light most favorable to the government, this court must find that the government sustained its burden of establishing the underlying fraud in both the *Overmyer* case and this case such that a reasonable jury might fairly find guilt beyond a reasonable doubt. Sufficient evidence was presented from which a reasonable jury might fairly find that Connery aided and abetted this fraud.

Connery was an experienced attorney with a background in accounting. Connery was Overmyer's in-house head counsel over a period of years. Connery's office adjoined Overmyer's and Connery was intimately familiar with the daily operations of all the Overmyer companies. Further, it was Connery who instructed out-of-state counsel to deny the relationship between Hadar and Telecasting; who prepared the proof of claim; and, who instructed Lynch to adjust entries which in effect "cancelled" the overpayment Telecasting owed to Hadar. It also was Connery who drafted the service agreements by which the funds Telecasting overpaid to Hadar were transferred to other Overmyer entities for Overmyer's personal use, and Connery who backdated corporate minutes approving the rental agreement on the broadcasting equipment and had them authorized by former board members rather than those then serving on the corporate board. A reasonable jury could find based on all the evidence in this case that all of this was done by a totally involved and fully informed defendant Connery to support a claim which in fact was fraudulent, filed to benefit Overmyer and to deceive and defeat legitimate creditor's claims. The determination of the trial judge that "At best the Government introduced evidence that shows that Mr. Connery aided in the filing of a proof of claim which he knew was subject to dispute by the debtor and other creditors," is not supported by this record. Credibility of the witnesses was for the jury and it had sufficient facts before it to reasonably infer that defendant Edmund M. Connery acted with the requisite criminal intent to deceive the bankruptcy court.

## CONCLUSION

For these reasons, the judgment of the district court is reversed and the verdict of the jury reinstated.