928 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leighton M. ANDERSON, Defendant-Appellant.
 No. 90-3440.
 United States Court of Appeals, Sixth Circuit.
 March 12, 1991.
 
 On Appeal from the United States District Court for the Southern District of Ohio, Eastern Division, No. 89-00223; Graham, J.
 
 S.D.Ohio
 
 1
 AFFIRMED AND CONVICTION AND SENTENCE SET ASIDE.
 
 
 2
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and ALLEN, Senior District Judge*.
 
 
 3
 ALLEN, Senior District Judge.
 
 
 4
 Leighton Anderson appeals from the judgment of conviction and sentence for conspiracy to distribute cocaine base, possession of cocaine base with intent to distribute, and illegal use of a firearm in drug trafficking. Arguing insufficiency of evidence for conviction, Anderson contends that he was entitled to a judgment of acquittal on all three counts. For the reasons set out below, we agree and set aside his conviction and sentence.
 
 
 5
 The government produced evidence showing that on September 13 and 14, 1989, cooperating witness Grayson bought crack cocaine in controlled purchases at a house in Columbus, Ohio. On each occasion, he saw two firearms and three people in the house. Within thirty minutes after Grayson left the house following his September 14 purchase, SWAT officers raided the house, knocking down the door and detonating explosive devices. As the officers entered, they saw two people leaving through a dining room window. They also saw two firearms in plain view, and on the floor they found crack cocaine amid pieces of a broken plate. On the kitchen table the officers found stacks of money as well as three plastic plates, one empty and two containing crack cocaine.
 
 
 6
 SWAT officers stationed behind the house arrested Anderson and the other person who had come through the dining room window. Anderson was holding money in his hand, and there was evidence from which it could be concluded that this money consisted of $100.00; he also had $346.00 in his pockets. None of this money was the marked money Grayson had used in the earlier controlled purchases, nor did the government attempt to prove that there was any cocaine on the money. The government did not offer any evidence that the stacks of money found on the kitchen table belonged to Anderson or bore his fingerprints. Neither did the government offer any evidence that Anderson's fingerprints were on the firearms or on either of the two plastic plates containing cocaine. A forensic expert testified that one of Anderson's fingerprints was taken from the plastic plate that did not contain cocaine.
 
 
 7
 At trial, Grayson positively identified Anderson's co-defendant as the person who had sold crack cocaine to him in both controlled purchases. However, Grayson was not asked whether he identified Anderson as one of the other two persons present on either occasion nor did he volunteer that information.
 
 
 8
 The government argues that Anderson fit part of the description Grayson gave following his September 13 visit to the house. In particular, the court is asked to note that Grayson described one of the persons he saw as having a "box haircut." At trial, Grayson identified Anderson as having a "box haircut." While we would have serious doubts whether such a description would be sufficient to single out Anderson from all other persons who have similar haircuts, careful review of the record reveals an even more serious problem: Grayson's testimony was, at best, equivocal as to whether he had attributed the "box haircut" to the seller of the crack cocaine or to another person in the house. However, narcotics officer Miller testified that he had placed a notation on a bag to denote that the money it contained was found with Anderson's co-defendant, not with Anderson. Miller's notation described the co-defendant as "the fatter guy with the box hairdo." Accordingly, the evidence is either that both defendants had box hairdos or that only Anderson's co-defendant had a box hairdo. This is clearly insufficient to permit the speculative conclusion that Anderson was one of the people Grayson had observed on September 13, 1989.
 
 
 9
 In United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989), the Court stated,
 
 
 10
 [i]t is well settled that the test to be applied by a trial court in connection with the defendant's motion for acquittal pursuant to Rule 29 of Federal Rules of Criminal Procedure is taking the evidence and inferences most favorable to the government. If there is such evidence therefrom to conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), York v. Tate, 868 F.2d 322 (6th Cir.1988); United States v. Conti, 339 F.2d 10 (6th Cir.1964).
 
 
 11
 Having this principle in mind coupled with the Sixth Circuit rule that a jury may convict solely on circumstantial evidence, we now analyze the entirely circumstantial evidence to determine whether it meets the applicable test. With reference to the conspiracy charge, we are unable to discern sufficient evidence. Nothing in the evidence indicates that appellant acted with the requisite purpose or that he had an agreement with another to accomplish that purpose.
 
 
 12
 Anderson relies on United States v. Lopez-Ortez, 492 F.2d 109 (5th Cir.1974), a case involving a two count indictment charging three defendants with conspiracy to possess marijuana with intent to distribute and possession of marijuana with intent to distribute. The evidence showed that law enforcement officers had observed several people unloading gunny sacks from the rear of a pickup truck and placing the bundles in a garage whose front door was very near a building. The agents moved in and identified themselves as federal officers, whereupon the participants in the unloading operation fled. The three defendants were apprehended in the immediate vicinity; Lopez-Ortez was hiding beyond a rock wall that separated the back yard of the premises from the property next door.
 
 
 13
 The Court of Appeals for the Fifth Circuit held that Lopez-Ortez should have been acquitted because there was no evidence showing that he was participating in the unloading operation or that he began his flight from near the truck. Likewise, there was no evidence showing that he had entered the house prior to the raid. The only proof offered for his guilt was the fact that officers found him behind the rock wall.
 
 
 14
 Here, as previously noted, circumstantial evidence indicated that appellant was in the house where crack cocaine was sold, and his fingerprints were found in the area from which the cocaine was distributed. Such evidence is just as consistent with innocence of the crime charged as with guilt. The only circumstance showing similar action by the two alleged co-conspirators is their attempt to escape through the dining room window. This circumstance clearly fails as evidence of an agreement to accomplish the crime charged. Therefore, the motion for judgment of acquittal should have been granted as to the conspiracy count.
 
 
 15
 As to charge of illegal use of a firearm in drug trafficking, the evidence, both direct and circumstantial, shows only that two firearms were found on the premises. Both firearms could have belonged to one or both of the other two persons observed in the house with Anderson (assuming, of course, that it was Anderson whom Grayson saw). The firearms equally could have belonged to entirely different persons. As the government failed to offer any evidence connecting Anderson with either firearm, the trial court should have granted appellant's motion for judgment of acquittal on that count.
 
 
 16
 As to Count 3, possession of cocaine base with intent to distribute, evidence of guilt is similarly lacking. The only remotely related evidence was the amount of money Anderson had with him when he fled, and possibly the fact of his flight as well. Possession of very large amounts of money, particularly money bearing cocaine traces, may constitute circumstantial evidence of drug transactions. United States v. Betancourt, 838 F.2d 168 (6th Cir.1986). However, the $446 Anderson had was apparently a rather small amount of money compared to the "stacks" of money that were in the house and that cannot be tied to Anderson. The amount he had in his hand at the time of his apprehension was entirely consistent with his testimony that he was on the premises to purchase crack cocaine rather than to sell it.
 
 
 17
 As to the evidence of flight, Anderson was an illegal alien. In addition, the noise produced by the explosive device used by the SWAT officers on entering the house could have easily had an intimidating effect. Furthermore, as Anderson's own story placed him on the premises for the purpose of purchasing a controlled substance, his attempted flight is just as consistent with innocence of the crime charged as with guilt.
 
 
 18
 In conclusion, we believe the government simply failed to produce enough evidence to withstand a judgment of acquittal.
 
 
 19
 ALAN E. NORRIS, Circuit Judge, concurring in part and dissenting in part.
 
 
 20
 While I agree there was insufficient evidence to support the firearms charge, I cannot agree there was insufficient evidence to support the other two charges.
 
 
 
 *
 Senior Judge Charles M. Allen, United States District Court for the Western District of Kentucky, sitting by designation