77 F.3d 483
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Lisa Marie ANGEL, Defendant-Appellee.
 No. 95-1327.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1996.
 
 Before: KEITH, KENNEDY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The government appeals the order of the District Court granting defendant's motion for judgment of acquittal following the jury's guilty verdict for intentional assault of a postal carrier in violation of 18 U.S.C. § 111. Because the District Court substituted its judgment for that of the jury, we REVERSE and REMAND for further proceedings.
 
 I.
 
 2
 Several months prior to and including June 4, 1994, Defendant-Appellee Lisa Marie Angel ("Angel") and her daughter were house guests of Veronica Washington ("Washington") at 327 Freyling Street in Grand Rapids, Michigan. Also living in the same household during that time was Washington's pet, a one year-old pit bull terrier named Sparky.
 
 
 3
 At trial, Washington testified that prior to June 4, 1994, Sparky had never attacked anyone nor had she been trained to attack. Washington's three grandchildren and Angel's daughter, all under the age of six, and the neighborhood children had regularly played with Sparky. Angel testified that she had never owned a dog and that she did not train, or take care of Sparky.
 
 
 4
 Sheri Bajdek, a letter carrier for the U.S. Postal Service, testified that on June 3, 1994, Angel angrily confronted her because the Postal Service had not yet delivered Angel's assistance check from the Michigan Department of Social Services. Upon reporting the incident to her supervisor, Bajdek was relieved of that route for the following day.
 
 
 5
 The next day, Angel, standing on Freyling Street, was talking with a friend named Carmen. Both women complained that the assistance checks were late. Also present was a group of children which included Angel's daughter and the Washington grandchildren. Sparky, a group of local teenagers and a construction worker who had stopped to pet the dog were twenty-five feet away. While Angel and Carmen conversed, a substitute letter carrier, Daniel Myles, was delivering mail on Freyling Street. Angel approached the letter carrier and asked whether he had her assistance check. When the letter carrier replied that he did not, Angel confronted him about the whereabouts of her check in a hostile manner. Myles repeatedly explained that he did not have her check and sensing her anger, finally proceeded on his way. As he walked away, Carmen suggested that Angel urge the dog to attack him. Within earshot of the letter carrier, Angel responded, "Get him, Sparky." Both women testified that they were joking.
 
 
 6
 Daniel Myles walked another twenty feet and passed Sparky and the group of people. As he passed the group, he noticed a man holding the dog. Approximately twenty feet after passing the dog, he heard a sound behind him and turned around to investigate. As he turned around he had to step out of the way as Sparky, who was charging toward him, slid on a patch of sand. Sparky regained her footing, began barking and resumed her attack. The carrier threw his satchel between himself and Sparky as the pit bull lunged and bit the satchel. Approximately fifteen seconds elapsed between Angel's utterance and Sparky's attack.
 
 
 7
 Angel ran toward the commotion and called Sparky off. The dog immediately stopped attacking. An expert witness testified that Angel's ability to call Sparky off demonstrated significant control over the dog. When interviewed by a postal inspector, Angel said that she did not intend for Sparky to attack the letter carrier when she said, "Get him, Sparky." In a written statement detailing her version of the incident, Angel also indicated that a group of neighborhood children and a man she did not know were the only other persons present at the time of the incident.
 
 
 8
 After the judge denied pre-verdict motions for judgment of acquittal, the jury returned a verdict of guilty. Angel timely filed a motion for judgment of acquittal following the verdict. The District Court granted Angel's motion for judgment of acquittal and set aside the jury verdict, concluding that no rational trier of fact could have found that Angel caused the dog to attack. This appeal followed.
 
 II.
 
 9
 The government contends that the District Court erred when it granted Angel's motion for judgment of acquittal, reversing the jury's verdict of guilty for intentional assault of a postal carrier. We review a trial court's ruling on a motion for judgment of acquittal under the same standard imposed on the trial court whether, considering the evidence in the light most favorable to the government, a rational trier of fact could have found the defendant guilty. United States v. Lake, 985 F.2d 265, 267 (6th Cir.1993) As we noted in United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989), the granting of a motion for judgment of acquittal "will be confined to cases where the prosecution's failure is clear" Connery, 867 F.2d at 930 (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). Moreover, this Court may not make independent determinations regarding the credibility of witnesses or the weight to be given the evidence. United States v. Davis, 981 F.2d 906, 908 (6th Cir.1992), cert. denied, 113 S.Ct. 2361 (1993).
 
 
 10
 In a hearing on Angel's motion for judgment of acquittal, the District Court determined that the government failed to prove that Angel's command, "Get him, Sparky," caused the attack. In reaching its conclusion, the District Court primarily focused on the fifteen second delay between the words and the attack. However, the District Court also indicated that there was "too much walking around," presumably referring to the other persons in the vicinity who may have instead caused the dog to attack. We find that the District Court erred in substituting its judgment for that of the jury. At the time of the offense. 18 U.S.C. § 111 provided in relevant part:
 
 
 11
 (a) In general--Whoever--
 
 
 12
 (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties.
 
 
 13
 shall be fined under this title or imprisoned not more than three years, or both.
 
 
 14
 Since § 111 describes an assault crime, proof of actual physical contact is not required. See United States v. Faymore, 736 F.2d 328, 335 (6th Cir.), cert. denied, 469 U.S. 868 (1984). In addition, in cases requiring a determination of intent a jury may conclude that a defendant intended the natural and probable consequences of her actions, United States v. Thomas, 728 F.2d 313, 320-21 (6th Cir.1984); United States v. Reeves, 594 F.2d 536, 541 (6th Cir.), cert. denied, 422 U.S. 946 (1979).
 
 
 15
 Viewing the evidence in the light most favorable to the government, it is clear that there was sufficient evidence upon which a reasonable jury could find that the crime of assault on a postal carrier was committed and that Angel intended to commit the crime. Angel admitted that she was angry with the postal service because of her late check and she admitted to having said, "Get him, Sparky," in the context of a conversation referring to the postal carrier while Sparky was in the vicinity. Sparky attacked fifteen seconds later. Furthermore, Angel was able to get Sparky to stop attacking immediately with her own words, which, according to an expert, evidenced she exercised enough control over the dog to have urged it to attack. Finally, although the dog did not attack immediately, a reasonable juror could have attributed the fifteen second delay to the dog being restrained by a member of the crowd.
 
 
 16
 Angel claims that the government failed to establish intent because she testified at trial that she did not intend for the attack to occur. Carmen testified that they were both joking when defendant said "Get him, Sparky," and Washington testified that in the time following the incident, Angel never claimed to have intended to cause the attack. Furthermore, Angel argues that she could not have intended the attack because Sparky, who was considered gentle, had not been trained to attack and therefore was not thought capable of attack. Angel further argues that she could not have caused the attack because she did not say the words loudly enough for the dog to hear and because the dog did not immediately attack after she spoke.
 
 
 17
 However, it is important to note that Angel's most critical evidence of lack of intent was her own testimony and that of the two corroborating witnesses, one of whom was not present at the time of the attack. In light of the evidence that contradicts Angel's claims of innocence, the jury may have chosen to discredit Angel's testimony as well as the testimony of her acquaintance and her host. That the jury may have chosen to disbelieve Angel's most crucial evidence on the grounds of credibility is an issue this Court cannot second guess.
 
 III.
 
 18
 Based upon the foregoing, it is evident that a reasonable jury could conclude that Angel intended to assault, intimidate or interfere with the postal carrier's duties. Accordingly, the judgment of the District Court is REVERSED, the guilty verdict is reinstated, and this case is REMANDED for further proceedings in accordance with this opinion.