972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-appellee
v.
Malcolm WILSON, Defendant-appellant
 No. 91-1510.
 United States Court of Appeals, Sixth Circuit.
 July 28, 1992.
 
 Before MILBURN and SILER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Malcolm Wilson appeals his convictions of: 1) conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846; 2) criminal forfeiture of his residence at 3172 Old Farm Road pursuant to 21 U.S.C. § 853; and 3) criminal forfeiture of his 1987 Mercedes Benz automobile pursuant to 21 U.S.C. § 853. Four of the defendant's co-conspirators were also charged with one count each of the conspiracy to distribute cocaine and cocaine base violation.[1] After a jury trial, all were convicted as charged except co-defendant Ronald Crain. The appeals of Wilson's three convicted co-defendants from the drug violation were simultaneously determined by a panel of this court in United States v. Williams, --- F.2d ---- (6th Cir.1992).
 
 
 2
 Defendant Malcolm Wilson now appeals, raising ten assignments of error challenging the constitutional, evidentiary and procedural determinations of the United States District Court for the Eastern District of Michigan, Southern Division. For the following reasons, we affirm the judgment of the district court.
 
 
 3
 The convictions in this case arise from defendant's participation in a Flint, Michigan drug ring. The evidence adduced at trial illustrated that drug lord Johnny Henderson, Malcolm Wilson and the remaining convicted co-defendants were members of a Flint, Michigan cocaine conspiracy which sold between 400 and 500 kilograms of cocaine from 1985 to 1989. Numerous participants were called as witnesses during the trial. The most important witness, drug lord Johnny Henderson, testified at trial and at the subsequent sentencing hearing. The other drug dealer witnesses substantiated and corroborated his testimony.
 
 
 4
 Two brothers, Malcolm and Kevin Wilson, conducted a cocaine supply business in the mid 1980s. Kevin Wilson met Henderson in 1985 and struck a deal to supply Henderson with cocaine for conversion into crack for sale in a chain of Flint crack houses. Thus, Kevin and Malcolm Wilson supplied Henderson, his associates and others, with cocaine from 1985 to 1989. In addition to supplying cocaine, Kevin Wilson himself owned crack houses and employed others to manage and operate them. By 1986, Kevin Wilson left the business in the full charge of his brother Malcolm. The record discloses that Malcolm Wilson also operated at least one crack house. It further reveals that Malcolm Wilson, even when he sold cocaine in powdered form, was fully aware that the dealers purchasing the drugs from him were cooking it into crack cocaine for sale.
 
 
 5
 To illustrate the conspiracy, the government presented evidence at trial which showed the numerous people who purchased powder and crack cocaine from Malcolm and Kevin Wilson on a regular basis. The trial testimony further showed that many members of the conspiracy, including Henderson and his closest associates, purchased supplies of cocaine from the Wilson brothers. The record also disclosed the interrelationship of the co-defendants and others in a large network of drug dealing in the Flint, Michigan area. The evidence additionally indicated that the Wilson brothers discussed price fixing, police evasion techniques, and communication devices with Johnny Henderson. The record identified Malcolm Wilson, like Johnny Henderson, to be one of the most successful and best known drug dealers in Flint.
 
 
 6
 The record additionally contains evidence on the two charges of criminal forfeiture which were brought exclusively against Malcolm Wilson. The proof consists of a litany of the receipts, purchase agreements, financing contracts and other documents disclosing the monetary transactions Malcolm Wilson engaged in during the period of the conspiracy. The list included, but was not limited to: 1) title history for Malcolm's 1986 Chevrolet van, 1987 Ford station wagon, 1988 Jeep, 1978 Trail Mobile trailer (for hauling freight), 1987 Mercedes Benz, 1969 Mercedes Benz, 1987 Cadillac four-door; 2) a bullet proof vest and papers confiscated from Malcolm Wilson's and Annette Parson's residence at 3218 Skander; 3) insurance records on the 1987 Mercedes and the 1988 Jeep Cherokee; 4) partnership checks payable to Wilson; 5) receipts for $2,700 in window work for a Barth Rd. address; 6) a carpeting receipt for the 1701 W. Dartmouth address; 7) a $379 check stub for merchandise for the residence at 1713 Donald; 8) a receipt for $811.95 in furniture for the same address; 9) receipts for $2,394 in appliances for a Fox Hill Glen apartment; 10) a receipt for $3,400 for window installation; 11) a receipt for $351.37 in merchandise from a lumber yard; 12) receipts for $246.36 in expenses; 13) a vehicle certificate of title for the 1969 Mercedes; 14) a mortgage payment book in Wilson's name; 15) the W-2 form for Wilson's girlfriend, Annette Parson, with an address of 1405 Woodhall Drive; 16) a rent check receipt in Wilson's name for the apartment at Fox Hill Glen; 17) a transfer of $3,000 from Annette Parson to a woman in San Francisco; 18) evidence of Malcolm's receipt and initiation of money transfers involving Chanel Wilson, Kevin Wilson and Tony Parson; 19) receipts for $204.56 spent on merchandise and $1,100 in repair work for a house at 409 E. Austin Street; 20) a $5,800 cashier's check receipt to Lincoln Massy Ford with Malcolm as the remitter; 21) a sales slips referring to 427 E. Baker; 22) travel documents for a trip Malcolm Wilson and Annette Parson apparently took to Nassau; 23) Malcolm Wilson's electric company refund for the Fox Hill apartment; 24) a customer waiver form on a 1986 Mercedes; 25) evidence that Malcolm Wilson put down several hundred dollars a Honda; 26) a receipt for $345 put into a Dartmouth Road residence; 27) checks in Malcolm Wilson's name for the 1713 Donald address; 28) a property tax receipt for 409 E. Austin Avenue, also in Malcolm Wilson's name; 29) various pieces of jewelry removed from Malcolm Wilson's possession and appraised; and 30) the purchase contracts for the 1988 Jeep Cherokee and a residence on 3172 Old Farm Rd., both in the name of Malcolm Wilson.[2]
 
 
 7
 The evidence also discloses that Malcolm Wilson conducted business and spent money in the name of Annette Parson's father, Thomas Parson: 1) insurance documents for the 1987 Mercedes were in Parson's name; 2) mortgage and other payment books in were Parson's name; 3) receipts for work done were in the name of Thomas Parson, but with Malcolm Wilson as signatory; and 4) Malcolm Wilson purchased a 1989 Kenworth truck in the name of Thomas Parson. Malcolm Wilson also entered into a corporate partnership with Thomas Parson and his daughter Annette. Wilson appears to have provided a number of downpayments for property and goods which were put in the name of Thomas Parson or the corporation, W & P Partnership. At trial, Parson testified that Malcolm Wilson asked him to co-sign for loans,[3] ostensibly because Wilson did not have a good credit rating. Only upon going to the bank did Parson learn that Wilson really expected him to put his name on the instrument as owner/debtor, though Malcolm planned to, and did, produce the funding. Parson agreed to do this because he wanted what was best for his daughter, who dated Wilson. For the same reason, Parson agreed to become involved in the partnership which, according to Malcolm Wilson, he created in order to start a freight hauling business. Wilson explained to Parson that he needed Parson's good credit to get started.
 
 
 8
 The record, however, discloses that friends and accomplices believed Malcolm had no legitimate employment. On a financing application, though, Malcolm claimed that he worked for the W & P Partnership at 1405 Woodhall as vice president, buying and selling homes. He claimed to gross a monthly salary of $2,000. In the application, Malcolm also claimed that Thomas Parson was his supervisor, which Parson denied in court. At trial, Parson also indicated that no business office existed and no business was conducted under the auspices of W & P Partnership.
 
 
 9
 After the jury found Malcolm Wilson guilty of the drug violation and two forfeiture counts charged, the district court ordered the forfeiture of Wilson's Old Farm Road house and the 1987 Mercedes Benz automobile, pursuant to the criminal forfeiture provisions of 21 U.S.C. § 853. The court additionally sentenced Wilson to 360 months of incarceration on the drug charge.
 
 I.
 
 10
 The defendant contends the trial court erroneously refused his request to bifurcate the trial, thereby separating trial on the criminal drug charge from proceedings on the criminal forfeiture counts. Defendant argues that the unitary proceeding on all three counts disallowed him from proving his innocence on the criminal forfeiture charges. His rationale is that in such a unitary proceeding, a defendant who wishes to show a legitimate source for the purchase of property or date of purchase out of the scope of the underlying crime, cannot so defend himself on the criminal forfeiture charges without opening himself up to questions on the underlying criminal charges. Thus, if a defendant elects to invoke his Fifth Amendment right to remain silent regarding the underlying criminal charges, that defendant effectively waives his right to defend against the criminal forfeiture charges and will automatically lose on those counts. Likewise, if a defendant elects to defend himself on the forfeiture charges, he must implicitly waive his right to silence regarding the underlying crime. Defendant also notes that while all five co-defendants were charged with one count of the drug violation, only he was additionally charged with two criminal forfeiture counts. Finally, defendant challenges the prejudice inherent in admitting evidence relevant to the criminal forfeiture charges in the trial on the underlying crime.
 
 
 11
 The government responds by claiming Wilson waived his right to raise this issue on appeal by: 1) failing to object in the trial court; and 2) not submitting a timely written motion for severance to the trial court.
 
 
 12
 Defendant made an oral motion to sever the forfeiture charges from the underlying criminal charge only three days before commencement of trial, at the beginning of the jury selection process.[4] He argued exclusively on the argument that the unitary proceeding prejudiced defendants not so charged with forfeiture. While FED.R.CRIM.P. 12(b) permits such an oral motion to be made prior to commencement of trial, it leaves it to the discretion of the trial judge. The district court, in its order setting the date for trial in this case, had previously designated a pretrial motion cut-off date of December 15, 1989. While the record of argument on the oral motion is devoid of explanation as to why the court summarily denied defendant's motion, the transcript of argument on defendant's subsequent new trial motion reveals that the court considered the motion untimely in light of its ordered motion cut-off date.
 
 
 13
 A trial court's discretionary ruling will not be disturbed absent a showing of abuse. Laney v. Celotex Corp., 901 F.2d 1319, 1320 (6th Cir.1990); Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156-157 (6th Cir.1988); Mitroff v. Xomox Corp., 797 F.2d 271, 275 (6th Cir.1986). An abuse of discretion exists only where the reviewing court is certain that a mistake was made. Laney, 901 F.2d at 1321; In re Bendectin, 857 F.2d 290, 307, 322 (6th Cir.1988), cert. denied 488 U.S. 1006 (1989); Schrand, 851 F.2d at 157.
 
 
 14
 Thus, we cannot find that the district court abused its discretion in denying defendant's untimely motion for severance.
 
 
 15
 The assignment of error is not well taken.
 
 II.
 
 16
 Wilson alleges that the district court denied an instruction to the jury stating criminal forfeiture must be determined beyond a reasonable doubt in order to convict defendant of the criminal forfeiture violations set forth in counts II and III of his indictment. Wilson concedes that the court instructed the jury on the reasonable doubt standard, but complains that the court did not so instruct the jury in conjunction with its instructions on criminal forfeiture.
 
 
 17
 The government responds by noting that defendant did not properly preserve this issue for appeal by objecting at trial.
 
 
 18
 An appellate court must review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-1011 (6th Cir.1987). A reviewing court may reverse a judgment if the instructions, viewed as a whole, were confusing, misleading and prejudicial. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72-73 (6th Cir.1990); Kitchen, 825 F.2d at 1011. Where, however, as here, the defendant fails to object to jury instructions at trial, the court of appeals will not address the question on appeal, unless there exists an obvious and prejudicial error. Young v. Langley, 793 F.2d 792, 795 (6th Cir.1986), cert. denied, 479 U.S. 950 (1986).
 
 
 19
 Our review of the jury instructions, in their entirety, reveals that the court explained or defined the concept of reasonable doubt no less than ten times in the course of its instructions to the jury. Joint Appendix pp. 815, 820-821, 826-827, 829, 830, 832, 833, 834, 841, 842.
 
 
 20
 We note particularly this portion of the jury instructions:
 
 
 21
 In order to find a judgment of forfeiture in either or both of these counts, you must first of all find beyond a reasonable doubt that the defendant Malcolm Wilson is guilty of count 1 of the indictment and that the theory which I have just described--that is, that the properties or either of them were derived from the--as a result of the violation of the statute, that theory has been proven by the government.
 
 
 22
 Joint Appendix, pp. 831-832.
 
 
 23
 Thus, this court finds the district court properly instructed the jury that to find criminal forfeiture, the jury must first find defendant guilty beyond a reasonable doubt of the underlying crime. The district court, however, never instructed the jury on the standard of proof to be used after guilt on the underlying crime is established. 21 U.S.C. § 853(d) sets forth a standard of proof styled a "rebuttable presumption":
 
 
 24
 (d) There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that--
 
 
 25
 (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II of this chapter or within a reasonable time after such period; and
 
 
 26
 (2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter.
 
 
 27
 The Sixth Circuit recently joined other circuits in determining that a criminal forfeiture is not an element of a criminal offense, but rather is analogous to a form of punishment and should be treated like a criminal sentencing proceeding. United States v. Smith, --- F.2d ---- (6th Cir.1992). See also, United States v. Jenkins, 904 F.2d 549, 557 fn. 9, 559 (10th Cir.1990), cert. denied, 111 S.Ct. 395; United States v. Herrero, 893 F.2d 1512, 1541 (7th Cir.1990), cert. denied, 110 S.Ct. 2623; United States v. Hernandez-Escarsega, 886 F.2d 1560, 1576-77 (9th Cir.1989), cert. denied, 110 S.Ct. 3237; United States v. Sandini, 816 F.2d 869, 871, 875 (3rd Cir.1987); United States v. Ginsburg, 773 F.2d 798, 901 (7th Cir.1985), cert. denied, 475 U.S. 1011. Thus, it necessitates proof only by a preponderance of the evidence that property was obtained during the period of the underlying criminal violation and no other legitimate source for funds exists. United States v. Smith, --- F.2d at ----. See also, United States v. Jenkins, 904 F.2d at 557 FN 9, 559; United States v. Herrero, 893 F.2d at 1541; United States v. Hernandez-Escarsega, 886 F.2d at 1576-77; United States v. Sandini, 816 F.2d at 871, 875; United States v. Ginsburg, 773 F.2d at 901. This standard is consistent with that set forth for RICO forfeiture actions. See United States v. Argie, 907 F.2d 627, 629 (6th Cir.1990). Thus, the district court erred by failing to give an instruction on this burden of proof to the jury. This error, for the reasons that follow, is not prejudicial and so does not require this court to sua sponte address this issue in the absence of an objection by the defendant at trial.
 
 
 28
 In this case, absent an instruction on the rebuttable presumption and the preponderance of the evidence standard, the jury could only understand the burden of proof to be beyond a reasonable doubt, as that instruction was exclusively and repeatedly given. So the jury, in fact, found criminal forfeiture beyond a reasonable doubt instead of by a preponderance of the evidence. By doing this, the government actually met a higher burden of proof than necessary. Thus, if the jury found criminal forfeiture beyond a reasonable doubt, we cannot say the defendant was prejudiced by the court's failure to instruct the jury on the lesser burden. Where, as here, there is no clear and prejudicial error, we decline to sua sponte raise and determine this issue.
 
 III.
 
 29
 Malcolm Wilson contends that the evidence adduced at trial was insufficient to prove his guilt beyond a reasonable doubt on the conspiracy to distribute cocaine charge. Thus, he alleges that the district court erred by denying his FED.R.CRIM.P. 29 motion for judgment of acquittal.
 
 
 30
 Constitutional due process ensures that a defendant cannot be convicted except by proof beyond a reasonable doubt of each element of the crime charged. In re Winship, 397 U.S. 358, 361-62 (1970). In determining the sufficiency of the evidence, the court must not weigh the evidence, consider the credibility of witnesses, nor substitute its judgment for that of the jury. Morelock v. NCR Corp., 586 F.2d 1096, 1104-1105 (6th Cir.1978), cert. denied, 441 U.S. 906 (1979). The court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979), reh'g denied, 444 U.S. 890 (1979); United States v. White, 932 F.2d 588, 589 (6th Cir.1991). The appellate court must review the evidence, even if exclusively circumstantial, and its inferences in favor of the government. United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989); United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1984).
 
 
 31
 21 U.S.C. § 841(a)(1) sets forth in relevant part:
 
 
 32
 (a) ... it shall be unlawful for any person knowingly or intentionally--
 
 
 33
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
 
 21 U.S.C. § 846 states:
 
 34
 Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
 
 
 35
 The uncontroverted evidence adduced at trial revealed that defendant Malcolm Wilson supplied large quantities of crack cocaine and cocaine powder to participant drug dealers in a large cocaine operation in Flint, Michigan during the latter half of the 1980s. Numerous convicted drug dealers struck plea bargains and testified for the government's case that Malcolm Wilson sold crack and powdered cocaine, first in partnership with his brother Kevin and later in his own operation, and ran one or more crack houses. Several witnesses identified Malcolm Wilson as one of the largest and most prolific drug dealers in Flint. The evidence further delineated the people who worked in Wilson's operation and what each did. The proof also showed that Wilson and another major drug dealer, Johnny Henderson, both with large organizations, joined forces in efforts to engage in price fixing and other practices aimed at securing and preserving a large market share of cocaine sales in Flint without police interference. The Wilson and Henderson network sold a combined total of 400 to 500 kilograms of cocaine during the relevant period. The evidence demonstrated how the Wilson brothers supplied cocaine to Henderson and his associates and other dealers for sale as cocaine powder and crack in the greater Flint area. Finally, the government produced voluminous documentary evidence of large scale cash expenditures by Malcolm Wilson during the relevant period, unexplained by his dearth of legitimate employment.
 
 
 36
 Upon review of the entire record, this court should find the evidence sufficient to sustain defendant's conviction for conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.
 
 IV.
 
 37
 Wilson controverts the district court's admission into evidence of the testimony of Flint police officer Bradford Barksdale regarding Wilson's arrest for driving without a license. Wilson claims that the testimony, which included a graphic description of the subsequent inventory search of his vehicle, was irrelevant and prejudicial.
 
 FED.R.EVID. 404(b) sets forth:
 
 38
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 39
 The trial court retains broad discretion in determining the admissibility of other acts evidence. United States v. Ishmail, 756 F.2d 1253, 1259 (6th Cir.1985). The court, however, must ensure that the defendant is tried for the crimes charged and not for who he is or what he did before. United States v. Vance, 871 F.2d 572, 575 (6th Cir.1989), cert. denied, 110 S.Ct. 323.
 
 
 40
 Bad acts evidence may be admissible in a drug conspiracy case where it is sufficiently related to the crimes charged and shows the development of a drug conspiracy. United States v. Long, 889 F.2d 1573, 1579 (6th Cir.1989); United States v. Panarella, 788 F.2d 377, 382 (6th Cir.1987); United States v. Hamilton, 684 F.2d 380, 384 (6th Cir.1982), cert. denied, 459 U.S. 976. The other acts need not be identical to the crimes charged to be admissible. United States v. Hamilton, 684 F.2d at 384-385.
 
 
 41
 At trial, Officer Barksdale testified that during the roll call at the beginning of his shift on February 19, 1988, the presiding officer told them about a suspect wanted in connection with the armed robbery of a convenience store. The presiding officer described the suspect as a black man wearing a brown baseball cap and driving a blue Bronco II with mag wheels.
 
 
 42
 At 1 a.m. the next day, Officer Barksdale spotted a blue Bronco driven by a black man fitting the description. Officer Barksdale, in his fully marked patrol car, pulled the Bronco over and asked the driver for his license. Malcolm Wilson, the driver of the Bronco, explained to the officer that he lost his license and could not produce it. The officer, pursuant to Michigan state law, arrested Malcolm for driving without a license.
 
 
 43
 After removing Wilson to the squad car, Barksdale conducted an inventory search of the vehicle which revealed a Louis Vuitton bag, sitting on the floor just to the right of the driver's seat, containing a 6 shot, .38 caliber Smith & Wesson revolver and $5,000 in U.S. currency. In the context of the same testimony, Barksdale also told the court about the previous stops and searches of co-defendants Kevin Wilson and Ron Crain.
 
 
 44
 Defendant Wilson was charged for his activities in a drug conspiracy "... beginning about 1985 and continuing until approximately February 1989...." Indictment, Count 1, Joint Appendix p. 42. The testimony he challenges refers to an incident which occurred on February 20, 1988, right in the midst of the term of the conspiracy. The firearms and large sum of cash uncovered by the search incident to the arrest constitutes some evidence relevant and indicative of illegal drug activity during the proscribed period. See United States v. Long, 889 F.2d at 1579; United States v. Panarella,788 F.2d at 382; United States v. Hamilton, 684 F.2d at 384.
 
 
 45
 After determining the admissibility of other acts evidence pursuant to FED.R.EVID. 404(b), the court must ensure the probative value of the evidence outweighs any prejudice. United States v. Acosta-Cazares, 878 F.2d 945, 950 (6th Cir.1989), cert denied, 110 S.Ct. 225 (1989); United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982); United States v. Czarnecki, 552 F.2d 698, 702 (6th Cir.1977), cert. denied, 431 U.S. 939.
 
 
 46
 In light of the tremendous volume of testimony implicating Malcolm Wilson in the drug conspiracy, it seems impossible to find that the potential for prejudice in admitting this evidence outweighs its probative value.
 
 
 47
 This court should further find meritless defendant's claim that the district court erroneously failed to make a preliminary ruling on this other acts evidence outside the presence of the jury.
 
 
 48
 FED.R.EVID. 404(b) contains no language requiring such a ruling. An amendment which took effect subsequent to this trial, on December 1, 1991, requires the government to notify the court before trial of its intention to use other acts evidence when requested by defense counsel. The Notes of Committee on the Judiciary Senate Report, No. 93-1277, regarding the 1991 amendment, states the following:
 
 
 49
 Nothing in the amendment precludes the court from requiring the government to provide it with an opportunity to rule in limine on 404(b) evidence before it is offered or even mentioned during trial.
 
 
 50
 The permissive language of the Note implies that the court does not now and did not then have a mandatory duty to rule in limine on other acts evidence. United States v. Huddleston, 485 U.S. 681, 688-689 (1988).
 
 
 51
 This assignment of error fails.
 
 V.
 
 52
 Wilson argues that U.S.S.G. § 2D1.1 and 21 U.S.C. § 841 are violative of the Equal Protection Clause of the Fifth Amendment of the United States Constitution because of the arbitrary, irrational and capricious treatment of cocaine base, for sentencing purposes, as the equivalent of one hundred times the same amount of cocaine powder. Wilson also charges that the failure of Congress to define "cocaine base" renders 21 U.S.C. § 841 void for vagueness.
 
 
 53
 On May 1, 1992 a panel of this court found these challenges meritless in the published opinion on the appeal of Wilson's three co-defendants. United States v. Williams, --- F.2d at ----. Thus, pursuant to the law of the case doctrine, this assigned error should fail. Miles v. Kohli & Kaliher Assoc., Ltd., 917 F.2d 235, 241 (6th Cir.1990); Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir.1990).
 
 VI.
 
 54
 Wilson contends that the Sentencing Guidelines for crack cocaine, as applied, violate the Equal Protection Clause of the Fourteenth Amendment by imposing harsher sentences on black defendants than on others for possessing cocaine. Defendant contends that the majority of crack convicts are black while the majority of cocaine powder convicts are white. Thus, defendant concludes, because punishment pursuant to the Sentencing Guidelines for crack crimes is significantly harsher than for cocaine powder crimes, the punishment discriminates against blacks.
 
 
 55
 Appellate courts have determined that the Sentencing Guidelines regarding crack cocaine are constitutional as rationally related to a legitimate government interest because the Guidelines: 1) do not discriminate on the basis of a suspect classification; and 2) rationally support the conclusion that the distribution of crack cocaine is a greater menace to society than the distribution of powder cocaine. United States v. Pickett, 941 F.2d 411, 418 (6th Cir.1991) (100:1 ratio between crack and powder cocaine is constitutional); United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir.1990); United States v. Solomon, 848 F.2d 156, 157-158 (11th Cir.1988). See also, McCleskey v. Kemp, 481 U.S. 279, 292, 297 (1987), reh'g denied, 107 S.Ct. 3199, 111 S.Ct. 2841 (In a death penalty case, without evidence of purposeful discrimination specifically against the defendant, he does not raise a meritorious claim).
 
 VII.
 
 56
 Wilson charges that the district court erroneously calculated the amount of cocaine to place him at a Sentencing Guidelines base offense level of 36 instead of 34.
 
 
 57
 In its opinion affirming the appeals of Wilson's three co-conspirator defendants, a panel of this court addressed the issue of the amount of drugs involved in this conspiracy. United States v. Williams, --- F.2d at ----. The panel found:
 
 
 58
 ... sufficient evidence exists to show that defendant [Kevin] Wilson was involved in a conspiracy which acquired over 400 to 500 kilograms of cocaine, 90 percent of which was distributed as crack. Under U.S.S.G. § 1B1.3, the district court must consider all quantities of drugs involved in the same conspiracy. U.S. v. Smith, 887 F.2d 104, 107 (6th Cir.1989).
 
 
 59
 United States v. Williams, --- F.2d at ----.
 
 
 60
 The law of the case doctrine compels us to accept this finding as true. Miles v. Kohli & Kaliher Assoc., Ltd. 917 F.2d at 241; Heathcoat v. Potts, 905 F.2d at 370.
 
 
 61
 A base offense level of 36 requires distribution of only 50 kilograms of cocaine or 500 grams ( 1/2 kilogram) of cocaine base. U.S.S.G. § 2D1.1. Thus, in light of the involvement of defendant in a conspiracy to distribute over 400 to 500 kilograms of cocaine, we cannot say the district court clearly erred by assigning defendant a base offense level of 36. United States v. Pauline, 935 F.2d 739, 756 (6th Cir.1991), cert. denied, 112 S.Ct. 315, 112 S.Ct. 323, 112 S.Ct. 660, 112 S.Ct. 883.
 
 VIII.
 
 62
 Wilson questions whether the terms "cocaine base" and "crack cocaine" are synonymous. Wilson avers that "cocaine base" is a "paste cooked from coca leaves" while "crack cocaine" is a "substance produced from cooking powder cocaine."
 
 
 63
 A panel of this court has held that "crack cocaine is one type of cocaine base." United States v. Williams, --- F.2d at ----, quoting United States v. Metcalf, 898 F.2d 43, 46 (5th Cir.1990). See also, United States v. Levy, 904 F.2d 1026, 1033 (6th Cir.1990), cert. denied, 111 S.Ct. 974 (1991).
 
 
 64
 This assignment of error is meritless.
 
 IX.
 
 65
 Wilson contends the district court clearly erred by overruling his objection to the court's imposition of a four level enhancement to his Sentencing Guidelines base offense level. Wilson alleges the court improperly based its finding that he was an organizer or leader in the conspiracy exclusively on evidence that he had a buyer-seller relationship with another co-conspirator.
 
 
 66
 An appellate court must review a district court's factual findings for clear error and the district court's legal conclusions de novo. United States v. Gainer, 940 F.2d 172, 174 (6th Cir.1991); United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.1991), cert. denied, 111 S.Ct. 2246 (1991). The reviewing court must determine whether the sentence was: 1) imposed in violation of law; 2) imposed via an erroneous application of the Guidelines; 3) outside the Guidelines range; or 4) plainly unreasonable and outside the range of applicable Guidelines. 18 U.S.C. § 3742; United States v. Hernandez, 943 F.2d 1, 2 (5th Cir.1991). A district court's factual findings are not clearly erroneous unless it appears the court has definitely made a mistake. Anderson v. Bessemer, 470 U.S. 564, 573 (1985).
 
 U.S.S.G. § 3B1.1 sets forth:
 
 67
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by four levels.
 
 
 68
 The government must prove an enhancement by a preponderance of the evidence. United States v. Chambers, 944 F.2d 1253, 1271 (6th Cir.1991); United States v. Gainer, 940 F.2d at 174; United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991). A court determining the applicability of a U.S.S.G. § 3B1.1 enhancement should consider the nature of the defendant's participation in the offense and the degree of recruitment and control defendant retained over his accomplices. United States v. Chambers, 944 F.2d at 1271.
 
 
 69
 The uncontroverted testimony presented at trial revealed that the defendant participated with numerous drug dealers other than his four co-defendants in a large cocaine operation in Flint, Michigan during the latter half of the 1980s. Numerous convicted drug dealers struck plea bargains and testified for the government's case that Malcolm Wilson sold cocaine powder and crack cocaine, first in a partnership with his brother Kevin, and later in his own business. Malcolm Wilson also operated one or more crack houses. The dealers who testified at trial indicated that the defendant was the source of the drugs sold in their own businesses. Several witnesses identified Malcolm Wilson as one of the largest and best known drug dealers in Flint. The trial testimony explicitly revealed that Malcolm Wilson sold to and could control the actions of more than five people. The evidence showed that Malcolm Wilson and drug network kingpin Johnny Henderson, both with large operations, joined forces in efforts to engage in price fixing and other practices aimed at maintaining a large market share of cocaine sales in Flint. The testimony further demonstrated that Malcolm Wilson's operation and the Henderson network sold large quantities of cocaine during the relevant period.
 
 
 70
 The uncontroverted evidence shows beyond a preponderance of the evidence that Malcolm Wilson was indeed an organizer/leader of the drug conspiracy. Thus, this assignment of error is not well taken.
 
 X.
 
 71
 In his last assignment of error, Wilson charges that his sentence of 360 months for a crack cocaine trafficking offense is cruel and unusual punishment violative of the Eighth Amendment of the United States Constitution. A panel of this court previously rejected this contention. United States v. Levy, 904 F.2d at 1034.
 
 
 72
 This assignment of error fails.
 
 
 73
 The judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 Malcolm Wilosn's co-defendants were Ronadl Crain, Kevin Wilson, Raymond Williams and Beverly Powell
 
 
 [2]
 Evidence in the record shows Malcolm Wilson put down $8,142 cash and checks in the amount of $3,000 and $9,000, plus the initial $1,000 cash deposit toward the total purchase price of $83,900 for the Old Farm Road property
 
 
 [3]
 One loan was for a $49,000 1987 Merceded Benz and the other for freight hauling equipment
 
 
 [4]
 Note the district court's docket shows that trial commenced on May 10, 1990 and not on the day jury selection began, May 7, 1990, as government counsel argues. Joint Appendix pp. 7-8