**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Steven D. VOYLES, Defendant–Appellant.**

**No. 92–5792.**

United States Court of Appeals,
Sixth Circuit.

Submitted March 12, 1993.

Decided June 7, 1993.

John MacCoon, Asst. U.S. Atty. (briefed), Jerry G. Cunningham, U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

Michael A. Wagner (briefed), Wagner, Nelson & Weeks, Chattanooga, TN, for defendant-appellant.

Before: KEITH and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a 115–month sentence imposed after the defendant, a convicted felon, pleaded guilty to a charge of possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] The defendant contends that

---

1. Section 922(g)(1) makes it a federal crime for

any person "who has been convicted in any court

the court erred in determining his base offense level under the sentencing guidelines and in denying him a reduction in his offense level for acceptance of responsibility. Unpersuaded, we shall affirm the sentence.

## I

On June 19, 1991, the defendant, Steven D. Voyles, entered a Tennessee pawn shop. He was accompanied by a woman named Charlotte Cross and Ms. Cross' nine-year old child. Mr. Voyles and Ms. Cross showed the clerk a .30 caliber, single-shot, long-barrelled pistol with a holster and scope and said they wanted to pawn it. Being unfamiliar with this kind of pistol, the clerk, an elderly female, looked it over at length. She was attempting to locate its serial number when a telephone call interrupted her. Taking the call, she turned her back on the "customers." While she was talking she heard a click made by the closing of the lid of the shop's jewelry case. The defendant had removed some jewelry from the case, and the clerk saw him hand it to Ms. Cross. The latter put the items into her purse.

The clerk came out from behind the shop counter and attempted unsuccessfully to wrest the jewelry away from Ms. Cross. Mr. Voyles retrieved the pistol from the countertop during the dustup between the two women. The visitors then left the pawn shop. As they did so, Mr. Voyles brandished the gun in the direction of the clerk and told her to "get back or somebody was going to get hurt." Mr. Voyles and his companions fled the scene in a car, but passersby recorded the license plate number. Mr. Voyles was arrested by the local police soon thereafter.

Mr. Voyles admitted to the police that he had taken the jewelry, and he was charged with armed robbery. The state court later dismissed that charge and charged Voyles with theft by taking instead. He was convicted on the latter charge, and the state court sentenced him to imprisonment for six years.

After this sentence was imposed, a federal grand jury indicted Mr. Voyles on the firearms charge. Mr. Voyles entered into a plea agreement that said the parties viewed the case as one in which the defendant had accepted responsibility for his involvement in the crime. Mr. Voyles cooperated with a probation officer in the preparation of a presentence report, and the report noted that he qualified for an acceptance-of-responsibility reduction in his offense level.

The sentencing court declined to grant such a reduction, concluding that Mr. Voyles had lied on the stand and had returned only part of the stolen jewelry.

In determining the defendant's base offense level, the court looked to U.S.S.G. § 2K2.1(c)(2),[2] which provides for the application of U.S.S.G. § 2X1.1 if the defendant used a firearm in connection with the commission of another offense. The latter section ties the base offense level to that for the "object offense." The court ruled that the object offense was robbery. U.S.S.G. § 2B3.1 sets the base offense level for robbery at 20, so the court started with that level.

The court then made a three-level adjustment, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), for "a dangerous weapon ... [that] was brandished, displayed, or possessed." After taking into account Mr. Voyles' criminal history, which placed him in the highest criminal history category (Category VI), the court imposed a sentence at the top of the range

of [ ] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Upon conviction of the federal possession offense (a crime that carries a maximum penalty of imprisonment for ten years), a person must be sentenced under the United States Sentencing Guidelines. The guidelines have been promulgated by the United States Sentencing Commission pursuant to the authority conferred on it by the Sentencing Reform Act of 1984. See 18 U.S.C. §§ 3551 et seq.

2. The court used the version of the guidelines that became effective on November 1, 1990, that version being more favorable to the defendant than the version by which it was replaced a year later. In this and in all other respects except for its rejection of the acceptance-of-responsibility reduction, the district court followed the recommendations of the probation officer as set forth in the presentence report. As stated in an addendum to the presentence report, the defendant had no objection to the probation officer's recommended guideline computations.

(92 to 115 months) specified in the sentencing table of the guidelines for an offense level of 23 and a criminal history category of VI. The court's judgment provided that the federal sentence was to be served concurrently with the state sentence.

## II

■ Mr. Voyles argues on appeal that he did not use or possess the weapon in connection with the theft, and that the sentencing court should therefore have used a base offense level of 12 pursuant to U.S.S.G. § 2K2.3. Pointing to differences in the testimony about the fracas at the pawn shop, and asserting that the clerk must have known that the gun was unloaded, he contends that the theft did not constitute robbery. (See

Tenn.Code Ann. § 39–13–401, which defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear.") Mr. Voyles asserts that the underlying offense is best characterized as a theft by taking of over $1000, the crime of which he was convicted in the state court.

■ The burden of proof borne by the prosecution in a criminal trial is significantly heavier than the burden which the prosecution bears at a sentencing hearing. In the situation before us, the state might not have been able to prove robbery beyond a reasonable doubt; that hardly means that the preponderance of the evidence does not support the conclusion that a robbery occurred, however.[3]

---

**3.** Judge Celebrezze, in a thoughtful dissent, takes issue with this paragraph. As is true in most other circuits, however, the caselaw of our circuit "requires [a sentencing court] to determine its factual findings at sentencing by a preponderance of the evidence...." See *Kinder v. United States*, — U.S. —, —, 112 S.Ct. 2290, 2291, 119 L.Ed.2d 214 (1992) (White, J., dissenting from denial of certiorari.) *Cf. United States v. Barrett*, 890 F.2d 855, 867 (6th Cir.1989), where the preponderance standard was held to govern a sentencing court's finding as to the defendant's role in the offense. See also *United States v. Wilson*, 972 F.2d 349, 1992 WL 179240 (Table), 1992 U.S.App. LEXIS 18517 (6th Cir.1992), a recent unpublished opinion in which we held that the government must prove "enhancement" by a preponderance of the evidence.

No federal defendant could be sentenced by a federal court for robbery, of course, without having been found guilty of a federal robbery offense. The defendant in the case at bar was not convicted of committing or attempting to commit a federal robbery offense, as the dissent correctly observes, and it follows that no matter what evidence was presented at his sentencing hearing, this defendant could not have been sentenced by a federal court for the crime of robbery.

It does not follow, in our view, that in sentencing this defendant for possession of a firearm in violation of 18 U.S.C. § 992(g)(1)—the federal offense of which he was convicted—the sentencing court was required to shut its eyes to the fact that the defendant used the firearm to commit a robbery. The dissent seems to suggest otherwise, citing *United States v. Holmes*, 975 F.2d 275 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1322, 122 L.Ed.2d 708 (1993), and *United States v. Bronaugh*, 895 F.2d 247 (6th Cir.1990). Both of those decisions, however, indicate that a federal sentencing court is permitted to take uncharged state offenses into account

in setting the penalty for the federal offense of which the defendant has been convicted. See *Bronaugh*, 895 F.2d at 251, where we made the point in these words:

"It may be thought anomalous that a defendant can receive a five-fold increase in his sentence because a preponderance of the evidence indicates he is guilty of an uncharged crime. But such increases are possible, under the guidelines, not only where the other crime is uncharged, but where the other crime does not even come within the jurisdiction of the federal courts."

*Cf. Holmes* at 281, discussing *United States v. DePew*, 932 F.2d 324 (4th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 210, 116 L.Ed.2d 169 (1991), a federal kidnapping case in which the "object offense" under U.S.S.G. § 2X1.1 was the crime of murder. The Fourth Circuit held it appropriate to use the base offense level for *federal* murder offenses, as *Holmes* recognizes, despite the absence of any evidence whatever that the murder came within "the special maritime and territorial jurisdiction of the United States." See *Holmes*, 281 at n. 5.

It is true, as *Holmes* points out at 280, that Application Note 2 in the commentary accompanying U.S.S.G. § 2X1.1 forbids the use of "speculative" specific offense characteristics to alter the offense level for the object offense; "the only specific offense characteristics from the guideline for the object offense that apply are those that are determined to have been specifically intended or actually occurred." In the case at bar, however, the only specific offense characteristic applied by the district court was one mandating a three-level increase in the offense level "if a dangerous weapon (including a firearm) was brandished...." The preponderance of the evidence indicates that Mr. Voyles "brandished" a firearm. In the words of the application note, this is something that "actually occurred." There is nothing the least bit "speculative" about it.

94

The sentencing court is in a unique position to judge the credibility of the witnesses. Here the sentencing court did not find Mr. Voyles and his accomplice and corroborating witness, Ms. Cross, to be credible witnesses; the court fully credited the clerk's testimony instead. Under the clerk's version of the facts, it was appropriate to view Mr. Voyles as a robber.

As an appellate court, we may not set aside factual findings made by the sentencing court unless they are clearly erroneous. *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir.1990); *United States v. Williams*, 894 F.2d 208, 213–14 (6th Cir. 1990). We cannot say that the sentencing court clearly erred in the determination at issue here. Although the clerk had examined the unfamiliar single-shot pistol, she testified that she did not know whether the gun was loaded or not. Her uncertainty is understandable. Even if the clerk had ascertained that the pistol was unloaded when it was presented for inspection, Mr. Voyles could have loaded it while the clerk was scuffling with Ms. Cross over the jewelry. Because Mr. Voyles brandished the gun and spoke as if it were loaded, it is not unreasonable that he should bear the consequences if his conduct put the clerk in fear. *Cf. McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986) (holding that an unloaded gun is a "dangerous weapon" within the meaning of 18 U.S.C. § 2113(d)); *United States v. Medved*, 905 F.2d 935, 939–40 (6th Cir.1990) (same holding with respect to a toy gun), *cert. denied*, 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991).

As to whether Mr. Voyles accepted responsibility, U.S.S.G. § 3E1.1(c) makes clear that a guilty plea does not automatically entitle a defendant to an acceptance-of-responsibility reduction in his offense level. The burden is placed on the defendant to prove his eligibility for the reduction. *United States v. Lassiter*, 929 F.2d 267, 270 (6th Cir.1991). After listing some of the relevant factors, such as voluntary and truthful admission of involvement and voluntary assistance in the recovery of the stolen items, Application Note 5 to § 3E1.1(c) says that the sentencing court's resolution of this issue deserves substantial deference. We have no basis for second-guessing the sentencing court on its finding that Mr. Voyles was not being candid about the nature of the underlying offense and was not truly accepting responsibility for it. It is uncontested, moreover, that of the $8,000 worth of jewelry stolen, only $5,000 worth was returned. Based on these two factors, the sentencing court had ample basis for denying a reduction for acceptance of responsibility.

**AFFIRMED.**

CELEBREZZE, Senior Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority opinion with regard to the following statement:

> The burden of proof borne by the prosecution in a criminal trial is significantly heavier than the burden which the prosecution bears at a sentencing hearing. In the situation before us, the state might not have been able to prove robbery beyond a reasonable doubt; that hardly means that the preponderance of the evidence does not support the conclusion that a robbery occurred, however.

In the instant case, though defendant's federal weapons charge arises through the commission of a state theft offense, the district court sentenced defendant as if he had been convicted of a federal robbery. The record, however, reveals no evidence of a federal robbery offense. The majority, by its statement, seems to indicate that though the defendant was never charged or tried for a federal robbery offense, and though the government put forth no evidence that defendant committed, attempted to commit or intended to commit a federal robbery offense, the defendant can be nonetheless sentenced for a crime as if the violation were supported by a preponderance of the evidence.

In the instant case, defendant Steven D. Voyles entered into an agreement with federal prosecutors whereby he pled guilty to one

count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). After conducting a hearing, the district court sentenced defendant to 115 months imprisonment, to run concurrently with a state sentence of six years arising from the same illegal conduct.[1]

The district court determined defendant's sentence in accordance with U.S.S.G. § 2K2.1(c)(1), which provides for a cross reference to U.S.S.G. § 2X1.1 where a defendant used/possessed a firearm in the commission, attempt, solicitation or conspiracy to commit another offense, or for a cross reference to homicide guidelines where a death occurred in the course of the crime. Application Note 14 to U.S.S.G. § 2K2.1(c)(1) requires the sentencing court to calculate the base offense level for the underlying offense pursuant to U.S.S.G. § 2X1.1. The court must then select the greatest base offense level from three possible determinations: 1) the calculation for the underlying offense defendant intended to commit with the firearm; 2) the appropriate § 2K2.1 firearm offense level; or 3) base offense level 12. *United States v. Holmes*, 975 F.2d 275, 280 (6th Cir.1992). Application Note 2 to U.S.S.G. § 2X1.1(a) requires the court to consider the underlying offense defendant specifically intended to commit or which actually occurred. *United States v. Holmes*, 975 F.2d at 280–281. The court cannot use the characteristics of a speculative offense to elevate defendant's base offense level. *United States v. Holmes*, 975 F.2d at 280–281. Finally, defendant's use of the firearm must be linked to the underlying offense in order to consider it in enhancing a firearm possession sentence. *United States v. Bronaugh*, 895 F.2d 247, 248, 252 (6th Cir.1990).

In the instant case, the district court determined the underlying offense to be a federal robbery offense, and so began its analysis with the base offense level set forth in U.S.S.G. § 2B3.1, which redresses the federal robbery offenses set forth in 18 U.S.C. §§ 1951, 2113, 2114, 2118(a). 18 U.S.C. § 1951 prohibits the obstruction of commerce through the use of force or violence; 18 U.S.C. § 2113 prohibits bank robberies and incidental crimes; 18 U.S.C. § 2114 prohibits theft of United States property; and 18 U.S.C. § 2118 prohibits thefts of controlled substances from persons registered with the Drug Enforcement Administration (pharmacists, for example).

Defendant was convicted and sentenced for a state theft offense which did not involve banks, interstate commerce, United States property or persons registered with the Drug Enforcement Administration. At the evidentiary hearing conducted by the district court prior to sentencing, the testimony revealed only that defendant brandished a gun and verbally threatened a pawnshop clerk as she struggled to reclaim jewelry defendant took from a display case while her back was turned. There is no indication in the record that these actions might be considered federally prohibited conduct. Absent evidence that while defendant committed a theft in contravention of state law he actually intended to commit a federal robbery offense, the district court should not have used the higher federal penalty in calculating defendant's base offense level. As I noted earlier, the majority of this panel opines that though "... the state might not have been able to prove robbery beyond a reasonable doubt; that hardly means that the preponderance of the evidence does not support the conclusion that a robbery occurred...." My review of the record reveals no evidence that the defendant intended to commit, or actually committed, a federal robbery offense. Likewise, I find no indication in the record that the State of Tennessee tried to prove the defendant did in fact commit such a federally prohibited crime. The district court essentially, and I believe improperly, allowed the defendant to be sentenced for a crime of which he was not indicted or charged and of which he was not proven guilty beyond a reasonable doubt. Accordingly, I must respectfully dissent from the majority's position.

---

1. Defendant pled guilty to a Tennessee state theft charge and received a six year sentence before entering his federal plea agreement on the firearm charge.